OPINION
Appellant, Martin E. Bolton, Sr., appeals his conviction and sentence on one count of felonious sexual penetration and six counts of sexual battery as well as the determination that he is a sexual predator. For the following reasons we affirm the decision of the trial court in full.
On June 4, 1997, Appellant, who was then 41 years of age, was indicted for seven sex offenses against Betty Lou Roberts, who was sixteen on that date. Betty is the daughter of Nancy Bolton and William Roberts. Nancy and Appellant were married from 1973 to 1981 and rekindled their relationship in 1991. Pursuant to the indictment, a bill of particulars and an amended bill of particulars it was alleged in Count I that in the fall of 1993, Appellant committed the offense of felonious sexual penetration by inserting his finger into the vaginal cavity of Betty Lou Roberts and by attempting to penetrate her with his penis. The offense was alleged to have occurred in East Liverpool, Ohio, at the home of the victim's grandmother.
The indictment also contained allegations that Appellant committed six acts of sexual battery against Betty Lou Roberts. Count II alleged that in the fall of 1994, Appellant engaged in vaginal intercourse with Betty Lou Roberts in a trailer located in Rogers, Ohio. Count III alleged that in the summer of 1996, Appellant engaged in vaginal intercourse with Betty Lou Roberts in a tent located at Bibbee's Lake Campground in Columbiana County, Ohio. Count IV alleged that in the fall of 1996, Appellant engaged in vaginal intercourse with Betty Lou Roberts in an apartment located in Negley, Ohio. Count V. alleged that on or about October 14, 1996, Appellant engaged in fellatio with Betty Lou Roberts in the apartment in Negley, Ohio. Count VI alleged that on or about December 5, 1996, Appellant engaged in fellatio with Betty Lou Roberts in the apartment in Negley, Ohio. Count VII alleged that on or about April 8, 1997, Appellant engaged in vaginal intercourse with Betty Lou Roberts in the apartment in Negley, Ohio.
Appellant filed a motion to dismiss the indictment, arguing most notably that the charges of sexual battery in the indictment were listed as violations of R.C. § 2907.04(A)(5). Appellant correctly noted that the specific section of the Revised Code cited in the indictment did not exist. The trial court overruled the motion, stating that the indictment provided Appellant with sufficient notice of the elements of the crime charged and of possible penalties.
A jury trial commenced on February 23, 1998. The state presented the testimony of Betty Lou Roberts who testified with respect to the circumstances of each charge in the indictment. On February 25, 1998, the jury found Appellant guilty on all seven counts in the indictment. Following a pre-sentence investigation, the trial court held a combined hearing on sentencing and to determine Appellant's status as a sexual predator. The trial court filed its judgment entry imposing sentence on April 17, 1998. The court sentenced Appellant to an indefinite term of imprisonment of ten to twenty-five years on Count I; a definite term of imprisonment of two years on each of Counts II and III and definite terms of imprisonment of five years each on Counts IV, V, VI and VII. The trial court ordered all sentences to be served consecutively. The trial court also adjudicated Appellant a sexual predator. On May 7, 1998, Appellant filed his notice of appeal.
We note at this time that in its judgment entries indicating the jury's verdicts and imposing sentence, the trial court listed the crimes of sexual battery as violations of R.C. § 2907.04(A)(5). As discussed earlier, that section of the Revised Code does not exist and the citation to it appears to be a typographical error. This error does not prejudice Appellant, as the indictment sufficiently apprised him of the crime charged, the elements of that crime and of the possible penalties as third degree felonies. Appellant proceeded at trial to defend himself on the charges under the properly-cited Code section designating the crime of sexual battery, R.C. § 2907.03(A)(5). It is thus apparent that the consistent citation to § 2907.04(A)(5) instead of §2907.03(A)(5) was merely a typographical error, there being a difference in only one numeral and clearly no confusion by any party that Appellant was charged with six counts of sexual battery.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE WHEN IT ALLOWED THE ADMISSION OF A PRIOR TAPED STATEMENT OF MICHELLE BRYAN AS SUBSTANTIVE EVIDENCE, RATHER THAN FOR THE LIMITED PURPOSE OF IMPEACHMENT."
Appellant's sister, Michelle Bryan, was called as a defense witness. On direct examination she testified regarding an incident that occurred in the summer of 1994. Bryan testified that Betty confided to her that Appellant was "messing" with her. Bryan stated that she immediately told Betty to go to the hospital but that Betty refused to do so. (Tr. p. 536). Bryan also testified that Betty's mother, Nancy, told her that Betty's allegations were false and that she had concocted the stories to garner sympathy because she was grounded and wanted her punishment lifted. (Tr. pp. 536-537). Bryan also stated that on one occasion she overheard Betty and her sister Melissa discussing that they needed to make allegations of abuse against Appellant in order to sever his relationship with their mother. (Tr. p. 540). Bryan further testified that Appellant had a good relationship with Betty and her siblings and that he is firm but not tough when disciplining the children. (Tr. p. 544)
On cross examination, the prosecutor impeached Bryan's testimony with a prior statement that Bryan had given to the prosecutor's investigator, Bettina Beight. Bryan admitted that she earlier stated that she wanted to confront Appellant immediately upon hearing the allegations, but denied that she stated she wanted to then proceed to the police. (Tr. pp. 546-47). Rather, Bryan maintained that she told Beight that she wanted to take Betty to the hospital immediately. (Tr. p. 547) Bryan also denied telling Beight that Appellant treated Betty well in front of other people but that behind closed doors, he mistreated her. (Tr. p. 550). Bryan admitted she told Beight that Appellant is, "* * * a very controlling person * * * what he say's goes." (Tr. p. 551). When asked if she made the statement that, "[Appellant] was the boss, and if Nancy didn't agree with it, he'd just beat the crap out of her,". Bryan explained that she may have made the statement and admitted that Appellant and Nancy would have violent, physical fights. (Tr. p. 551)
Subsequent to Bryan's testimony, the prosecutor sought to admit an edited audio tape of Bryan's statement to Beight. Appellant's counsel objected stating:
 "I object to the admission of the tape, and the use of the tape recording as impeachment. I do not have any objection to the use of the portion at page two, which we discussed, because I agree that it is conflicting from the testimony of the witness in the courtroom, Michelle Bryan, during her testimony. But the remainder of the tape recording is — is not contradictory. It is, the witness did testify to what is contained in the rest of the tape recording, the portions we're playing. And based upon that, Your Honor, I would object to that tape being used."
(Tr. p. 684)
Over Appellant's objection, and upon proper authentication by Beight, the trial court permitted the prosecutor to play an edited portion of the audio tape of Bryan's prior statement. In her statement, Bryan told Beight that when she heard Betty's allegation, she stated, "[w]e're going down there and I'm gonna confront [Appellant] * * * I'll be able to tell if he's lying, and I'll be able to see if he's telling the truth and we are going to go straight to the police. Well Nancy wanted no part of that." (Tr. p. 735). In her taped statement, Bryan also indicated that it was two days after she learned of the allegations that Nancy told her that Betty had fabricated the allegations in response to Appellant's punishment. (Tr. p. 735). Bryan also stated in response to Beight's inquiry as to how Appellant treated Betty and her siblings that, "* * * in front of people he treated them really pretty good. He was strict, but he treated them pretty good. But behind closed doors, terrible." (Tr. p. 737). Bryan also told of an incident where Appellant pulled Betty's hair, leaving a bald spot. (Tr. pp. 737-738). Bryan's statement also included allegations of abuse against Nancy and her children. Bryan told Beight that Appellant would lock Nancy and the children out of the house in the winter forcing them to sneak into the basement to keep warm. (Tr. p. 737). Bryan also stated that Appellant was a very controlling person; "[h]e was the boss. And if Nancy didn't agree with it, he'd just beat the crap out of her." (Tr. p. 238)
The edited audio cassette of Bryan's statement was marked, identified and admitted into evidence. (Tr. pp. 733, 736) During their deliberations, the jury requested to listen to the statement and the bailiff played the tape for them. (Tr. p. 828)
Appellant contends that it was prejudicial error for the court to admit the tape as substantive evidence. Appellant argues that once the tape was played to the jury during trial, any impeachment purpose was satisfied. He claims that the admission of the tape into evidence and the jury's subsequent review of its contents without an instruction to limit their consideration for impeachment purposes only caused them to place greater weight on the prejudicial and inflammatory elements of the statement. Appellant alleges that it was the prosecution's plan to have the prejudicial elements of the statement admitted in order to portray Appellant as a, "notorious wife-and-child beater" to, "incite ire and a desire for retribution in the jury."
Appellant contends that the only rule under which Bryan's statement could have been admitted into evidence is Evid.R. 801(D)(1)(a) as a prior sworn statement subject to cross-examination. Appellant properly notes in this context that Bryan's statement was not made under oath and that it therefore is not admissible as substantive evidence.
The state argues that Bryan's statement was admissible under Evid.R. 613, which, at the time of Appellant's trial stated:
 "(A) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
 "(B) Extrinsic evidence of prior inconsistent statement of witnesses. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."
Appellee states that Bryan was given the opportunity to explain or deny her prior statement on cross examination and did, in fact, deny specific portions of her prior statement. Appellee further argues that the statement was offered for impeachment purposes only and not as substantive evidence. Appellee argues in the alternative that even if the evidence was improperly admitted, the error is harmless as other evidence at trial provided overwhelming proof of Appellant's guilt.
Appellant's assignment of error on this issue lacks merit.
Appellant's argument on appeal is inconsistent with the objection he raised at trial. Error may not be predicated on a ruling which admits evidence without a timely objection in the record stating the specific ground for objection unless the specific ground was apparent from the context. Evid.R. 103(A)(1). When he objected to the admission of the tape, Appellant did not specifically argue, nor was it evident from the context, that the tape contains inadmissible hearsay or that it was inflammatory or prejudicial, as he now argues on appeal. Nor does the record reflect that Appellant requested a curative instruction. At trial, Appellant objected to the admission of the tape claiming that portions of the recording did not represent contradictions in Bryan's testimony. However, Appellant was not specific as to what was contradictory and what was not. We cannot speculate as to what Appellant's trial counsel may have been thinking when he made such a vague objection. Nonetheless, the present assignment of error is inconsistent with the basis of the objection to the recorded statement at trial and Appellant appears to have waived the issue. State v. Mason (1998), 82 Ohio St.3d 144, 159.
However, Evid.R. 103 does not preclude our review of plain error by the trial court. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Crim.R. 52(B).
 "To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice."
State v. Smith (Oct. 28, 1999), Jefferson App. No. 96 JE 1, unreported, 2, quoting State v. Nielsen (1990), 66 Ohio App.3d 609,611. Notice of plain error is to be taken with great caution under exceptional circumstances, and then only to prevent a manifest miscarriage of justice. State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
Appellant essentially argues that the trial court should have included a curative instruction cautioning the jury to consider the audio tape for impeachment purposes only. Having reviewed the record before us, we cannot conclude that the lack of a curative instruction rises to the level of plain error. As discussed in subsequent assignments of error, there was a substantial evidentiary basis for the jury's verdicts. Moreover, the trial court did instruct the jury that, "[i]f statements given by a witness at a previous time differ from the testimony of the witness here in the courtroom, you may consider that in testing that witness' [sic] credibility." (Tr. p. 810). We cannot speculate that the jury considered the audio tape as substantive evidence, as there is a presumption that the jury has followed the trial court's general instruction that the prior statement could only be used for impeachment purposes.State v. Jones (1996), 115 Ohio App.3d 204, 207.
Appellant is also concerned that the jury considered the audio tape as substantive evidence that he was a wife and child abuser. If that was, in fact, the case, it was merely cumulative to his own testimony that he struck Nancy (Tr. p. 571) and to Betty's testimony that Appellant sexually abused her. We therefore hold that Appellant's first assignment of error lacks merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT HIS RIGHT TO DUE PROCESS UNDER U.S. CONST. AM. XIV AND OHIO CONST. ART. I, § 16
AND HIS RIGHT OF CONFRONTATION AND CROSS-EXAMINATION UNDER U.S. CONST. AN. VI AND XIV AND OHIO CONST. ART. I, § 10 WHEN IT DENIED DEFENDANT THE ABILITY TO INTRODUCE WITNESSES NOT ON ITS WITNESS LIST ON DISCOVERY, BUT PERMITTED THE STATE'S INTRODUCTION OF WITNESSES NOT IN ITS WITNESS LIST ON DISCOVERY."
Appellant argues that the trial court treated him unfairly by permitting the state to present undisclosed witnesses while denying him the right to present undisclosed witnesses. Appellant's argument on this issue is extremely vague, however, as his counsel does not demonstrate the basis of the alleged error in the record. Such a nebulous effort flirts with violating App.R. 16(A)(3). Giving Appellant and his counsel the benefit of the doubt, we have attempted to extrapolate his argument from his statement of relevant facts and our review of the record.
At trial, Appellant sought to introduce the testimony of thirteen-year-old Burgess Allison, whom Appellant claims could have rebutted testimony by Melissa Roberts that she saw Appellant and Betty in a compromising position. Appellant's trial counsel claims that he did not learn that Allison was a potential witness until he had a conversation with Allison's mother concerning the possibility of having Allison's sibling testify. Appellant also sought to introduce the testimony of Gloria Scott, whom he claims could have rebutted testimony that Appellant's daughter encouraged Betty Lou Roberts to withdraw her allegations of abuse. Appellant claimed that Scott's identity as a potential witness did not come to light until Betty Lou Roberts testified at trial.
The trial court permitted two of the state's undisclosed rebuttal witnesses to testify in response to Appellant's testimony. The court permitted the testimony of Adam Hudack, a House Arrest Officer supervising Appellant's house arrest and work release for an offense Appellant committed in West Virginia. Hudack's testimony authenticated house arrest documents which the state proffered on cross-examination of Appellant. The court also permitted the testimony of Ronald Gray, Appellant's former employer, who testified to contradict Appellant's testimony that he was a model employee and gave the specific reasons Appellant was terminated.
A review of the record before us reveals that this assignment of error also lacks merit.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. We will not find error unless the trial court has abused its discretion in the matter and. the accused has suffered material prejudice. State v. Hirsch (1998), 129 Ohio App.3d 294, 307
citing State v. Martin (1985), 19 Ohio St.3d 122, 129. "Abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Bereschik (1996), 116 Ohio App.3d 829,834 citing State v. Adams (1980), 62 Ohio St.2d 151, 157.
In the present case, Appellant sought to admit his witnesses' testimony under different circumstances than the admission of testimony of the state's undisclosed rebuttal witnesses. Based on those circumstances, the trial court's decisions to deny the former and admit the latter were not unreasonable, arbitrary or unconscionable.
With respect to Appellant's excluded witnesses, the trial court would not permit either witness to testify, stating that they would not be testifying as to any facts and that they were not disclosed pursuant to the court-ordered witness list. The court further stated that, "[t]he Rule requires even reasonably expected rebuttal witnesses to be on the witness list, and therefore, I will not permit them to testify." (Tr. p. 411). Upon proffered testimony by both excluded witnesses, Appellant requested the court to reconsider its decision to exclude the testimony of Burgess Allison. The court responded, "I think the witness with reasonable diligence could have been discovered prior to yesterday. And my ruling stands on both witnesses." (Tr. p. 432). The trial court later stated that, "Allison's proffer here indicated that the Defendant was well aware months ago Allison existed, and might have some relevant information in this case * * *" (Tr. p. 689). Thus, the record reflects that the trial court stated reasonable grounds for excluding the witnesses.
With respect to the state's witnesses called in its case in rebuttal, the disclosure of the names of witnesses whose testimony becomes relevant for impeachment purposes only after presentation of the defense case is not required. State v.Howard (1978), 56 Ohio St.2d 328, paragraph two of the syllabus. The trial court and the parties were aware that Adam Hudack's testimony became relevant when Appellant disputed the state's characterization of house arrest documents as indicating that Appellant violated probation. (Tr. p. 689). With respect to Ronald Gray, the trial court ruled that the state could not have anticipated Appellant's testimony on the employment issues because he is not required to give a prior indication of his testimony. (Tr. p. 689).
The court drew a clear distinction between the circumstances of Appellant's proffered witnesses and the state's witnesses. As such, we do not accept Appellant's argument that he received disparate and unfavorable treatment from the trial court. We find no abuse of discretion by the trial court with respect to the admission of undisclosed witnesses. We hold that this assignment of error lacks merit.
Appellant's third assignment of error alleges:
 "THE VERDICTS OF THE TRIAL COURT ON THE SEVEN CHARGES WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In a mere one and one-half page argument, Appellant challenges that none of his seven convictions were supported by the manifest weight of the evidence presented at trial. Appellant argues that there was no scientific evidence presented and that the state's case relied chiefly upon the testimony of Betty Lou Roberts. Conversely, Appellant places his own reliance primarily on his own testimony to deny the charges. Appellant states that based on the evidence presented it was, "* * * a close call for the jury to decide." This assignment of error lacks merit, also.
The issue as to whether a trial court judgment is against the manifest weight of the evidence was addressed extensively inState v. Thompkins (1997), 78 Ohio St.3d 380. In Thompkins, the Court distinguished between sufficiency of the evidence and weight of the evidence. Id., 386. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law." Id., quoting Black's Law Dictionary (6 Ed. 1990) 1433, and Crim.R. 29(A). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins, 386, citing State v. Robinson (1955), 162 Ohio St. 486.
The Thompkins court made it clear, however, that even though a court of review may find that a trial court decision should be sustained as to the sufficiency of the evidence, a reviewing panel may, nevertheless, find that the decision was against the manifest weight of the evidence. State v.Thompkins, 387 citing State v. Robinson, 487.
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"
State v. Thompkins, 387, quoting Black's, supra, 1594.
When reviewing a trial court decision on the basis that the verdict was against the manifest weight of the evidence, a court of appeals acts as a "thirteenth juror", especially when it reviews the trial court's resolution of conflicts in testimony.State v. Thompkins, 387 citing Tibbs v. Florida, (1982),457 U.S. 31, 42. Furthermore:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins, 387 quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict."
State v. Thompkins, 387-388, quoting Tibbs v. Florida 41-43. (citations and footnotes omitted.) To reverse a jury verdict as against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. State v.Thompkins, 389.
As Appellant has not charged the legal sufficiency of. the evidence, it is undisputed that the state produced sufficient evidence to convict Appellant on all counts of the indictment. Turning to the question of whether the convictions were supported by the manifest weight of the evidence, we reiterate that Appellant has admitted in his brief that the state's case hinged largely on the testimony of Betty Lou Roberts, while his own case depended greatly on his own denial of the charges; thus Appellant refers to the matter as a "close call for the jury". Such a concession, however, is fatal to Appellant's manifest weight of the evidence argument. Judging the credibility of witnesses is primarily the responsibility of the trier of fact, in this instance, the jury. State v. DeHass (1967), 10 Ohio St.2d 230,231. Where conflicting testimony exists, either of which version may be true, we may not choose which view we prefer. State v. Gore (Feb. 17, 1999), Mahoning App. No. 94 CA 97, unreported, 2. "Instead, we must accede to the jury who `is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80.
As there was sufficient evidence to convict Appellant on each count of the indictment, and as we defer to the jury's resolution of conflicting testimony, we hold that the convictions were not against the manifest weight of the evidence and we overrule this assignment of error.
Appellant's fourth assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION IN LIMINE, AND PERMITTING THE STATE TO INTRODUCE TESTIMONY AS TO DEFENDANT [sic] SEXUAL MISCONDUCT IN WEST VIRGINIA, WHICH WAS PREJUDICIAL, IRRELEVANT TO THE MATTERS CHARGED, AND OCCURRED OUTSIDE THE JURISDICTION OF THE COURT. FURTHER, THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY THAT THIS EVIDENCE WAS TO BE CONSIDERED FOR IMPEACHMENT PURPOSES ONLY."
At trial, Melissa Roberts testified concerning an incident in West Virginia in which she discovered Appellant and Betty in bed together. The trial court overruled Appellant's motion in limine which sought to exclude that evidence on the basis that it constituted an alleged separate offense which could only serve to confuse the jury and that the evidence was clearly inadmissible under Evid.R. 608(B).
This assignment of error lacks merit. We begin by noting that the denial of a motion in limine does not preserve any error for review absent a contemporaneous objection at trial to the evidence sought to be excluded. State v. Hill (1996),75 Ohio St.3d 195, 202-203; State v. Brown (1988), 38 Ohio St.3d 305, paragraph three of the syllabus. No such objection appears on the record. As such, we may only examine this assignment of error in terms of plain error. Evid.R. 103(D); Crim.R. 52(B).
As we stated earlier, to find plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise. Thus, failure to consider the error would result in a clear miscarriage of justice. State v. Smith,supra. We find no error, certainly not plain error, in the present case.
Evid.R. 404(B) reads:
 "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or intent."
The Ohio Supreme Court has expounded that this rule:
 "* * * contemplates acts which may or may not be similar to the crime at issue. If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible."
State v. Broom (1988), 40 Ohio St.3d 277, 281-282, citing Statev. Flonory (1972), 31 Ohio St.2d 124, 126.
In the present case, Appellant was convicted of sexual offenses which occurred over a period of time beginning in the fall of 1993 through April of 1997. All of the offenses involved the same victim. Melissa Roberts testified that in Newell, West Virginia, she discovered Appellant and Betty Lou Roberts in the same bed and unclothed at least from their waists. (Tr. pp. 349-351). This incident happened sometime between May of 1995 and January of 1996, while Appellant was living in West Virginia. Melissa Roberts' testimony clearly tends to show a plan of repeated sexual offenses by Appellant. Her testimony indicated an act similar in nature, time and place to the offenses charged. As such, the testimony was admissible under Evid.R. 404(B).
Even if the testimony were inadmissible, it would not have resulted in a different outcome at trial. If the evidence were excluded, there was still sufficient, and competent evidence to support a finding of guilt beyond a reasonable doubt. Therefore, we hold that this assignment of error lacks merit.
Appellant's fifth assignment of error alleges:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED THE STATE TO INTRODUCE EVIDENCE OF APPELLANT'S ASSERTING HIS SIXTH AMENDMENT RIGHT TO COUNSEL AND FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION DURING THE STATE'S INVESTIGATION OF THE CASE."
Appellant argues that the trial court committed plain error by permitting the state to introduce evidence that he asserted his constitutional rights to counsel and against self incrimination. Appellant states in his brief:
 "In both the state's case in chief and its case on rebuttal, the jury heard testimony from investigators Tina Beight and Jerry Herbert that Defendant refused to speak to investigators without an attorney present, thereby asking the jury to infer Defendant's knowledge of his own guilt from invocation of his Sixth Amendment right to counsel and Fifth Amendment right against self-incrimination. (Tr., at 176-177, 696-697)."
This assignment of error also lacks merit. Appellant properly acknowledges that as he failed to object at trial, this assignment is subject to the plain error standard of review. We again note that in order for a reviewing court to find plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and, thus, failure to consider the error would result in a clear miscarriage of justice. State v. Smith, supra. Errors of constitutional dimension, as Appellant alleges here, however, are inconsequential only if found to be harmless beyond a reasonable doubt. State v. Williams (1983), 6 Ohio St.3d 281,286, citing Chapman v. California (1967), 386 U.S. 18, 24.
We first note that Appellant has grossly misinterpreted the testimony of Bettina Beight and Jerry Herbert, neither of whom testified as Appellant indicates in his brief. Beight testified only that she was unable to contact Appellant while conducting her investigation and that after Appellant was indicted she was contacted by an attorney retained by Appellant. (Tr. pp. 176-177). Jerry Herbert testified that he and Beight tried to contact Appellant and that they were unable to do so. (Tr. pp. 696-697). There is no implication from this testimony that Appellant asserted his right against self incrimination nor that he would only speak to investigators only through counsel. Furthermore, the argument that this testimony raises the inference that Appellant acknowledged his guilt by refusing to speak to investigators is tenuous in the extreme.
Also detrimental to Appellant's argument in this matter is his trial counsel's cross-examination of Beight. Appellant's counsel questioned Beight regarding her contact with the attorney he retained. (Tr. pp. 185-186). Counsel elicited from Beight that she did not speak with Appellant's attorney but merely received a message stating that the attorney represented Appellant. (Tr. p. 185). Moreover, it was on direct examination by his trial counsel that Appellant himself testified that he had contacted the attorney prior to his indictment. (Tr. p. 562).
It has been stated that, "[w]here a defendant in a criminal trial objects to the testimony of a witness on a particular subject, and then proceeds to cross-examine the witness on such subject, the cross-examination constitutes waiver of any error in the initial allowance of such testimony." State v. Miller
(1988), 56 Ohio App.3d 130, paragraph one of the syllabus. This Court has also ruled that in voluntarily introducing testimony into the record on direct examination of his own witness, an appellant waives any objection to the introduction of that testimony. Klein v. Dietz (Dec. 16, 1998), Mahoning App. No. 95 CA 47, unreported, 6, citing State v. Miller, 132.
In a situation such as the matter before us, a defendant is faced with two options: he must either raise an objection to the testimony and stand on that objection, or he can present evidence to rebut the objectionable evidence. State v. Miller, 132. It is obvious here that Appellant not only failed to object to the testimony, but consciously permitted its admission and sought to rebut the inferences by cross examination on the subject and by offering his own testimony regarding the subject.
Due to the fact that Appellant misconstrues the pretrial testimony and due to his choice to not only waive objection but also to validate the admission of that testimony, we hold that there was no plain error in the admission of testimony by Beight and Herbert. Therefore, this assignment of error lacks merit.
Appellant's sixth assignment of error states:
 "WHETHER THE TRIAL COURT ERRED IN DESIGNATING APPELLANT A SEXUAL PREDATOR, AS APPELLEE, THE STATE OF OHIO, FAILED TO MEET ITS BURDEN OF PROVING SUCH BY CLEAR AND CONVINCING EVIDENCE."
Appellant asks this Court to find error in the trial court's adjudication of him as a sexual predator when the state failed to present any evidence of the relevant statutory facts at the hearing which was held to determine his sexual predator status. Appellant admits that the state has arguably proven that he maintained an improper sexual relationship with Betty Lou Roberts. However, he argues that the state should have presented evidence at the hearing that he was generally likely to commit sexual offenses in the future. Appellant specifically notes the absence of any expert testimony which is permissible under R.C. § 2950.09(B)(1).
We first note that Appellant's only objection at the hearing held to determine his status as a sexual predator was that the sexual offender registration statute, R.C. Chapter 2950, is unconstitutional. The trial court properly overruled the motion stating that other courts have declared R.C. Chapter 2950 to be constitutional. See, State v. Cook (1998) 83 Ohio St.3d 404. As Appellant failed to object on the grounds which he now raises on appeal, that the prosecutor failed to present clear and convincing evidence that he was a sexual predator, he has waived all but plain error. Crim.R. 52. We will not reverse unless it appears that the trial court committed error and that but for that error, the result of the trial clearly would have been different. State v. Smith, supra.
Under the circumstances of the present case, the trial court was required to hold a hearing prior to Appellant's sentencing to determine whether he was a sexual predator and thus, subject to reporting requirements. R.C. § 2950.09(B). In so doing, the trial court is to consider a number of factors including, but not limited to: the offender's age; prior criminal record regarding all offenses; the age of the victim; whether there were multiple victims; whether the offender used drugs or alcohol to impair the victim; whether the offender has completed any sentence imposed for a prior crime; any mental illness or disability of the offender; the nature of the offender's sexual conduct, contact, or interaction with the victim and whether the same was part of a demonstrated pattern of abuse; whether the offender displayed cruelty or made threats of cruelty while committing the offense and any additional behavioral characteristics which contribute to the offender's conduct. R.C. § 2950.09(B)(2).
During the combined sentencing/determination hearing permitted under R.C. § 2950.09(B)(1), the prosecutor made reference to Appellant's criminal history as presented in a pre-sentence investigation report. (Sent.Tr. 4). In addition, Betty Lou Roberts made a victim impact statement. (Sent.Tr. pp. 5-6). The prosecutor and Appellant were given the opportunity to add to or rebut the record, an opportunity which both declined. (Sent.Tr. p. 6).
The trial court stated:
 "* * * I find based on the evidence before the Court at trial, as well as the other documents the Court read during the course of the trial, other statements of other witnesses that were not admitted into evidence, and the Defendant has been convicted of sexually oriented offenses, specifically Felonious Sexual Penetration, and six counts of Sexual Battery, I find that the Defendant is a sexual predator and adjudicate him as such."
(Sent.Tr. pp. 6-7).
A pre-trial investigation report was clearly before the trial court at the combined hearing. Appellant's counsel made reference to it when asking for leniency. (Sent.Tr. p. 3) The Ohio Supreme Court has determined that a pre-sentence investigation report and other reliable hearsay may serve as a basis for adjudication as a sexual predator since the Rules of Evidence are not applicable. State v. Cook, supra, 425. However, the court made no specific reference to any factors that may have been included in that report and we are without the benefit of reviewing it. Furthermore, the prosecutor did not demonstrate evidence of any of the relevant factors at the hearing.
It is apparent from the sentencing transcript, however, that the trial court took notice of evidence presented at trial and of Appellant's contemporaneous convictions for the sexually oriented offenses. Taking such notice of facts, though, appears to be contrary to R.C. § 2950.09(B)(3) which states, "[a]fter reviewing all testimony and evidence presented at the hearing
* * * the judge shall determine by clear and convincing evidence whether the offender is a sexual predator." (Emphasis added.) As redundant as this seems under the facts of this case procedurally, it is obvious that evidence demonstrating the enumerated factors of R.C. § 2950.09(B)(2) is to be presented at the determination hearing.
That said, any error in not formally demonstrating the relevant factors does not constitute plain error. We first note the proximity of the combined hearing with Appellant's trial. The evidence at trial and his convictions are intrinsically coupled with his adjudication as a sexual predator. At trial, Appellant was convicted of his crimes beyond a reasonable doubt. Logic dictates that if the court is permitted to consider Appellant's criminal record and the nature of the underlying convictions, the record of the contiguous proceeding is relevant to the sexual predator hearing, where, the standard is a finding based on clear and convincing evidence. The record of his convictions alone is a sufficient basis for his adjudication as a sexual predator. The trial court convicted Appellant of seven sexually oriented offenses, which took place over several years, against a child with whom he assumed fatherly duties. The convictions implicate factors relevant to the hearing: Appellant's age, his victim's age, his relationship with the victim and a pattern of abuse. Moreover, evidence at trial implicated other relevant factors. Appellant provided alcohol to his victim prior to committing one of the offenses. (Tr. p. 278). With respect to another offense, there was evidence that Appellant threatened his victim and her loved ones with harm. (Tr. p. 273). There is also evidence of revocation of house arrest for a prior crime committed by Appellant (Tr. pp. 720-721).
Again, while a trial court is allowed to rely on a pre-sentence investigation report in making its determination, we stress that the combined hearing lacked the formalities envisioned by R.C. § 2950.09(B)(3). However, we stress also that Appellant failed to timely object to that flaw, leaving us to review his adjudication on a plain error basis. We cannot say that the outcome of this matter would. have been different if the court had not apparently taken notice of the underlying evidence adduced at trial because the record does not clearly support this conclusion. Although we disapprove of the laxity of the prosecution and the trial court in failing to meet the ceremonious requirements of a determination hearing, the present Appellant was not prejudiced by this apparent laxity. We therefore hold that this assignment of error lacks merit.
For all the foregoing reasons, we affirm the judgment and sentence of the trial court.
Cox, P.J., concurs, Donofrio, J., concurs.
 ______________________ CHERYL L. WAITE, JUDGE